F I L E D

AUG 1 9 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

THE CONSTRUCTION INDUSTRY WELFARE )
FUND OF ROCKFORD, ILLINOIS )
                                   )
                    Plaintiff,     )      CASE NO. 08 C 50 1 79
          v.                       )
                                   )          KAPALA
                                   )
TRAVIS LEE FANN                    )
                                   )
                    Defendant.     )

## COMPLAINT

**NOW COMES** the Plaintiffs, THE CONSTRUCTION INDUSTRY WELFARE

FUND OF ROCKFORD, ILLINOIS (hereinafter referred to as the "Plaintiff" or the

"Fund"), by and through their attorney, MARC M. PEKAY, P.C. and hereby complain

against the Defendant, TRAVIS LEE FANN (hereinafter referred to as "Defendant" or

"Estes") as follows:

### COUNT I - RESTITUTION

1.      Jurisdiction is based on the Employee Retirement Income Security Act of

1974, 29 U.S.C Section 1001 et. Seq. including Sections 502(a)(3 and 29 U.S.C.

Section 1132 (a)(3)(B)(i).

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C.

Section 1132 (e)(2), and 28 U.S.C. Section 1391 (a) and (b).

3.      The Fund is a multiemployer benefit plan within the meanings of

Sections 3(3) and 3(37) of ERISA, 29 U.S.C. Sections 1002(3) and 37(A).  The Fund is

maintained and administered in accordance with Section 302(c)(5) of the LMRA, 29

U.S.C. Section 186 (c)(5).  The Fund is established pursuant to collective bargaining agreements and Declarations of Trust previously entered into between various Unions and certain employer associations whose employees are covered by the collective bargaining agreements with the unions. The Fund has its offices and conducts business within this District.

4.      Defendant, Charles TRAVIS FANN is an individual who was a participant in the Plaintiff Fund based upon his working for companies that had a collective bargaining agreement with various unions which permitted the Company to make contributions to the Plaintiff on behalf of the Defendant.

5.      On or about July, 2007, Defendant began a business known as Midwest Concrete Construction which was engaged in an industry affecting interstate commerce within the meaning of Section 3(5) of ERISA, 29 U.S.C. Section 1002(5), and Section 301 (a) of the LMRA, 29 U.S.C. Section 185(c).

6.      On or about July, 2007, on a date unknown to Plaintiff, Defendant informed a union business agent that he was considering starting his own company but he did not yet want to sign a collective bargaining agreement.

7.      On or about July, 2007, Defendant failed to notify the Plaintiff that he was starting his own business and was no longer a "bargaining unit" employee.

8.      On or about September 8, 2007, Travis Fann was injured at 1233 Game Trail North, Bourbonnais, Illinois, while working as Midwest Concrete Construction when a hoist lowering a trowel machine malfunctioned.

9.      On September 8, 2007, Defendant, while working as Midwest Concrete Construction, had one employee working with him, Travis Fann d/b/a Midwest

2

Concrete Construction had secured workers' compensation insurance on his employees but had not taken out workers' compensation insurance on his own behalf. (Exhibit A)

10.    On October 22, 2007, Defendant submitted an Accident Information Report to the Plaintiff in which he indicated that the type of accident was "friend/relative home" and, in answer to "Where did accident occur?" he responded, "Friend's Place". He also indicated that he was not going to pursue any action related to this accident. (Exhibit B).(See also Exhibit C, which is the letter dated October 23, 2007 sending the report.)

11.    Exhibit D sets forth that Defendant said he "recently fell from a roof while helping a friend."

12.    On or about December 11, 2007, Defendant submitted a "Time Loss Application" in which he indicated that the accident occurred at a "friends" and in answer to the question, "Is disability due to an accident?"  He checked a box marked "No"; that he did not intend to file a workers' compensation case and the accident happened when he "fell off foundation onto back." (See Exhibit E).

13.    Based upon the Time Loss Application, the Plaintiff Fund paid Defendant $8,975.40, which includes medical payments of $3,475.40 and time loss disability of $5,500.00.

14.    Time loss disability payments are not available from Plaintiff to non-bargaining unit employees.

15.    On or about January 16, 2008, Defendant submitted another injury report in which he stated that he "was working trowel machine into basement and hoist

3

malfunctioned throwing me off the top of the foundation." In response to a question of any claim against any other business he said, "No!! I only planned on turning this claim into my insurance." (See Exhibit F).

16.     On or about January 22, 2008, Defendant sent a letter to the Plaintiff Fund which stated, "The name of the person I was working for is John Delhey, Ashley Custom Homes" and "It was Saturday and I was not on Ashley Custom Homes' payroll. (See Exhibit G).

17.     On or about February 19, 2008, in response to a letter sent on behalf of the Plaintiff requesting more information on Ashley Custom Homes, Mr. Fann informed the attorney that he did not intend to file a claim against a third-party and said that "the friend I was working for was John Delya" (and gave the persons address and phone). He then stated, "It was a Saturday job for a friend, not the actual company itself." He also stated, "Furthermore, I didn't know doing concrete away from my primary job was a crime." (See Exhibit H).

18.     On or about February 19, 2008, Defendant submitted another accident information report setting forth the location of the accident and in response to the question if there was other insurance stated, "I don't know Johns Insurance and since this was not during work hours or for any company, I don't see how its relevant. I did work for a friend. I guess that concept is hard to grasp." (See Exhibit I.)

19.     On or about March 3, 2008, Defendant sent a letter to the Plaintiff Fund in which he said that "I was working for John Delahay" and "I was not in any binding contract to Ashley Custom Homes (John Delehay's company) or John Delehay himself. I was helping a friend out on Saturday." "He doesn't return my calls since the

4

accident and is obviously not my friend anymore due to the fact you office is going to make him responsible." (See Exhibit J).

20.    On or about March 3, 2008, Defendant submitted another Accident Information Request in which he said the accident was a "friend place of business" and that he did not intend to file a claim. He also said, "This is the name of the person I was working for. I don't know the type of insurance". (See Exhibit K).

21.    On or about March 28, 2008, attorney Joseph Yurgine sent a letter to the Plaintiff Funds in which he indicated he was representing the Defendant. In that letter Mr. Yurgine indicated (See Exhibit A):

A.    "Travis, on September 8, 2007, owned and operated a business known as Midwest Concrete Construction, which is a sole proprietorship. The business essentially involved residential concrete work."

B.    "In September, 2007, Travis had two (2) employees ... who were covered by Workers' Compensation insurance. There was no Worker's Compensation coverage for Travis, who owned the business."

C.    After giving the location he stated, "the occurrence took place at ... At that particular location, a residential home was being constructed. The general contractor was Ashley Custom Homes and the owner of that business, I believe to be John Delya. Midwest Concrete Construction was asked to perform concrete work at that location on September 8, 2007, Travis along with his employee, ..., and another individual, ... who is not an employee of Midwest Construction, but was another independent contractor, went to the site to perform work. When he went over there, Travis had no written contract or written agreement with Ashley Custom Homes."

5

D. "Prior to September 8, 2007, Travis had never been asked by John Delya or Ashley Custom Homes to perform work of any kind. Travis received a check from Ashley Custom Homes for time and material for work performed without any deductions…"

E. "On that particular date, he was not an employee of Ashley Custom Homes, but rather was an independent contractor."

F. "All of the equipment utilized by Midwest Concrete Construction and which was involved with the occurrence, was supplied by Travis Lee Fann."

G. "Under the circumstances of this case, there is no Worker's Compensation case."

22. The Articles of Agreement and Declaration of Trust creating the Fund specifically state, "Anything in this provision contained to the contrary notwithstanding, the provisions hereof shall in no manner have application to a claim or demand of an Employee compensable under provisions of the Workmen's Compensation Laws or similar legislation." (See Exhibit L, p. 9 of Agreement and Declaration of Trust).

23. The Plan Document, which establishes the benefits and exclusions contains a specific exclusion which excludes, "Any treatment, supplies and/or services related to an Occupational Illness or Occupational Injury" and Occupational Injury is defined as meaning "any Illness or Injury (as applicable) for which the Covered Person is entitled to receive benefits under any state or federal law governing payments to workers for Injuries and/or Illnesses incurred as a result of employment. This includes, but is not limited to, Injuries and Illnesses which result in an entitlement to benefits

6

under any state workers' compensation law or similar state or federal law. (See Exhibit M, pp. 19, 20, 75 of the Summary Plan Document).

24.    The Construction Industry Welfare Fund allows "bargaining unit" employees to make a "self payment" at a reduced rate to continue their insurance. A non-bargaining unit person, such as an owner of a business, is not allowed to make a self payment.

25.    On or about August 6, 2007, (Exhibit N) and again on or about November 2, 2007, (Exhibit O), Defendant made a self payment and signed the documents that states, "I certify that I am not self-employed or employed by an employer who does not have a collective bargaining agreement with a union member of the Fund, and that I am currently a member of the Union."

26.    Defendant signed the self payment sheets on or about August 6, 2007, and November 2, 2007, knowing that he was owner of Midwest Concrete Construction.

27    Defendant, as owner of Midwest Concrete Construction was not permitted to make said "self payments" and would have lost coverage shortly after he formed his business in July of 2007.

28.    Based upon the self payments made by the Defendant, Plaintiffs are informed and believe that Defendant and his dependents filed claims and were paid benefits after a time when Defendant's insurance coverage would have been terminated. The amount of the benefits paid is unknown until it can be determined the date Defendant started Midwest Concrete Construction.

29.    Pursuant to Section 502(a)(3) of ERISA, Plaintiff is entitled to Restitution of all money paid by the Plaintiff toward the Defendant's claims including not only the amount paid but also liquidated damages, interest and attorney fees incurred.

**WHEREFORE**, Plaintiffs respectfully request this Court enter a judgment against Defendant,

1.    In favor of the Plaintiff In the amount of $8,975.40.

2.    Enter a Judgment in favor of Plaintiffs in an amount not yet ascertained but as it relates to benefits paid to Defendant and Defendant's dependents after Defendant formed Midwest Concrete Construction.

3.    Award the Plaintiff additional amounts in liquidated damages, interest, the cost of litigation, and legal fees incurred by the Plaintiff.

4.    Such other and further relief as this Court deems appropriate.

## COUNT II - COMMON LAW FRAUD

30.    Plaintiffs re-allege paragraphs 1 -28 of Count I as paragraphs 1-28 of this Count II.

31.    Since on or about July 2007, Defendant engaged in fraudulent conduct to secure benefits for himself and his dependants and engaged in conduct set forth in Count I of this Complaint which included, but were not limited to:

A.    Failing to notify the Plaintiff Fund that in July, 2007, that Defendant started a business known as Midwest Concrete and was no longer a bargaining unit employee.

B.      Submitting Accident Information Reports on or about October 22, 2007 (Exhibit B), January 16, 2008, (Exhibit F), February 19, 2008, (Exhibit I) and March 3, 2008, (Exhibit K) indicating that on September 8, 2007, Defendant was injured while working for a friend when he was working for a contractor (Ashley Custom Homes) as a contractor (Midwest Concrete Construction) and had an employee working on the job. He also supplied the equipment used on the job at which Defendant was injured.

C.      Claiming that the injury on September 8, 2007 was not occupational or work related.

D.      Securing time loss benefits from the Plaintiff even though time loss benefits are not available to non-bargaining unit employees.

E.      Claiming that he was working for John Delehay or John Delya, but did not have a contract with this individual or with Ashley Custom Homes even though prior to September 8, 2007, he was asked to perform concrete work at a construction of the home where Defendant was injured.

F.      Making self payments on or about August 6, 2007 and November 2, 2007 even though non-bargaining unit employees are not permitted by the Plaintiff to make such self payments.

G.      On or about August 6, 2007 and November 2, 2007 certifying that he was not self employed when he had already started his own business and was the owner of Midwest Concrete Construction.

H.      Filing claims and securing benefits for dependants when Defendant was not eligible for benefits.

9

32.     Defendant's actions were in wanton disregard for the truth of the events and were to engage in malicious conduct to secure the payment of benefits.

**WHEREFORE**, Plaintiffs respectfully request this Court enter a judgment against Defendant:

1.     In favor of the Plaintiffs in the amount of $8,975.40.

2.     Enter a Judgment in favor of Plaintiffs in an amount not yet ascertained but as it relates to benefits paid to Defendant and Defendant's dependents after Defendant formed Midwest Concrete Construction.

3.     Award the Plaintiff additional amounts in liquidated damages, interest, the cost of litigation, and legal fees incurred by the Plaintiff.

4.     Award the Plaintiff punitive damages.

5.     Such other and further relief as this Court deems appropriate.

## COUNT III – PUNITIVE DAMAGES

18.     Plaintiff reallege paragraphs 1-28 of Count I and paragraphs 29 – 32 of Count II as paragraphs 1-32 of this Count III.

19.     Defendant's conduct in fraudulently obtaining benefits from the Plaintiff amounts to intentional misconduct.

20.     Based on the above, Plaintiff is entitled to Punitive Damages as a result of Defendant's actions.

**WHEREFORE**, Plaintiffs respectfully request this Court enter a judgment against Defendant,

1.     In favor of the Plaintiffs In the amount of $8,975.40.

2.    Enter a Judgment in favor of Plaintiffs in an amount not yet ascertained but as it relates to benefits paid to Defendant and Defendant's dependents after Defendant formed Midwest Concrete Construction.

3.    Award the Plaintiff additional amounts in liquidated damages, interest, the cost of litigation, and legal fees incurred by the Plaintiff.

4.    Award the Plaintiff punitive damages

5.    Such other and further relief as this Court deems appropriate.


Respectfully submitted,

THE CONSTRUCTION INDUSTRY WELFARE FUND OF ROCKFORD, ILLINOIS, *ET AL.*

BY:    s/Marc M. Pekay
       MARC M. PEKAY, Attorney for Plaintiffs


MARC M. PEKAY, P.C.
30 North LaSalle St.
Suite 2426
Chicago, IL  60602
(312)  606-0980

LAW OFFICE

# JOSEPH R. YURGINE
*Professional Corporation*

Joseph R. Yurgine

SUITE 500, ONE DEARBORN SQUARE
KANKAKEE, ILLINOIS 60901

---

Telephone (815) 939-3322

Fax (815) 939-4759

WEBSITE: www.agoodjoe.com
E-MAIL: joeyurgine@yahoo.com

March 28, 2008

    VIA FACSIMILE (limited)
    and First Class Mail

Group Administrators, Ltd.
450 Remington Rd.
Schaumburg, IL  60173-4540
FAX:  847-519-1979

Construction Industry Welfare Fund
Attn:  Board of Trustees
927 S. Alpine Rd., Ste. 408
Rockford, IL  61108

Medical Group Insurance Services, Inc.
1040 N. 2nd Street
P.O. Box 4509
Rockford, IL  61108-4509

Construction Industry Welfare Fund
Eligibility Coordinator TIC International Corp.
6525 Centurion Drive
Lansing, MI  48917-9275

Law Offices of Marc M. Pekay
30 N. LaSalle St., Ste. 2426
Chicago, IL  60602
FAX:  312-606-0983

## NOTICE AND DEMAND

Re:    Construction Industry Welfare Fund
        Insured:     Travis Lee Fann
        D/A:        September 8, 2007

Ladies and Gentlemen:

    I am representing Travis Lee Fann, his wife, Dana Fann, and their two (2) small children, Shaylin Fann, born July 24, 2002, and Gage Fann, born May 14, 2004.  This family resides at 283 N. Jefferson, Bradley, Illinois.  I call your attention to the following:

    1.  Shaylin Fann, the daughter, is a disabled special needs little girl, who since September 8, 2007, has had additional eye surgery.  She has incurred since September 8, 2007, considerable medical costs and bills, some of which have been paid under the Welfare Fund and some of which are still due and owing;

    2.  On or about September 8, 2007, Travis Lee Fann and his family were beneficiaries under referenced fund.  Travis, on September 8, 2007, owned and operated a business known as Midwest Concrete Construction, which was a sole proprietorship.  The business essentially

# EXHIBIT A

March 28, 2008
Page Two

involved residential concrete work. In September, 2007, Travis had two (2) employees by the name of John Rowsey and Brandon Fox, who were covered by Workers' Compensation insurance. There was no Workers' Compensation coverage for Travis, who owned the business. Travis, as of September 8, 2007, and from our point of view at all times concerned herein, has been an insured and has made contributions and payments to your Trust Fund entitling him and his family to all of the benefits under the plan;

3. On or about September 8, 2007, Travis had a serious accident. The occurrence took place at 2025 Spring Park Loop, Bourbonnais, Illinois. At that particular location, a residential home was being constructed. The general contractor was Ashley Custom Homes and the owner of that business, I believe to be John Delya. Midwest Concrete Construction was asked to perform concrete work at that location and on September 8, 2007, Travis, along with his employee, Brandon Fox, and another individual by the name of Gary Kolbe, who is not an employee of Midwest Concrete Construction, but was another independent contractor, went to the site to perform work. When he went over there, Travis had no written contract or written agreement with Ashley Custom Homes. Midwest Concrete Construction was to be paid for their time and material in performing work at the site. Prior to September 8, 2007, Travis had never been asked by John Delya or Ashley Custom Homes to perform work of any kind. Travis received a check from Ashley Custom Homes for time and material for work performed without any deductions, federal, state, social security and the like. He has never received a W-2 form for any money ever received by Ashley Custom Homes. On that particular date, he was not an employee of Ashley Custom Homes, but rather, was an independent contractor. All of the equipment utilized by Midwest Concrete Construction and which was involved with the occurrence, was supplied by Travis Lee Fann. Thus, he went to the work site with a hoist and a trowel machine and other equipment. The failure of the hoist resulted in the accident;

4. When Travis arrived at the work site, there already existed a concrete foundation wall. There was a hole in the ground, but the foundation had already been prepped. Grade work had been completed when he arrived. Travis' purpose in being there was to pour concrete over the foundation and in the course of doing that, he set up a hoist, which he brought over, which had to be placed on top of the foundation. Once the hoist was placed on the foundation wall, Travis then attached a trowel machine that he brought over to the wire cable, which is attached to a winching machine on the hoist. The arm of the hoist is then raised with the trowel machine and rotated above the basement floor. Travis, immediately prior to the occurrence, was standing on the hoist. During the rotation of the trowel machine, the hoist loosened up. There exists on the hoist a set screw, which apparently came loose. The hoist and trowel machine, thus tilted and fell along with Travis to the bottom of the over-dig. As a result of this fall, Travis sustained a serious back injury.

I tell you all of this in considerable detail because since this event happened, Travis has been interviewed several times. He has supplied written accident reports. To my knowledge a thorough investigation has been made by representatives of Group Administrators, Ltd. Medical records have been reviewed. Witnesses have been interviewed. Travis has cooperated fully with requirements under the plan. Your plan and its representatives are fully conversant with the facts and the law, or should be. Under the circumstances of this case, there is no Workers' Compensation case. Since the instrumentalities that were involved with the accident itself were

March 28, 2008
Page Three

supplied by Travis, there are no third party claims against Ashley Custom Homes or the owner of the premises. In fact, the cause of the occurrence itself could be the carelessness of Travis himself for not examining the set screw, which came loose on the hoist itself, while attempting to lower a trowel machine.

Despite all of the aforesaid being true, you continue to make material misrepresentations about Travis' failure to cooperate and about their being some sort of third party or subrogation claim or Workers' Compensation, claim, which under the circumstances of this case is non-existent. Furthermore, following the occurrence, you approved and pre-certified Travis' medical treatment along with his daughter, Shaylin, for her surgery. What documents did you rely on then?

Travis has now been informed that you have terminated him and his family from the plan retroactively to November 30, 2007. On what basis and under what provision of the plan do you do that? Travis' union dues are paid through July, 2008. Furthermore, despite what appears to be an adverse benefit determination, now made retroactive to November 30, 2007, there has been a failure to notify this family in writing of not only the specific reasons with reference to plan provisions for which denial is based on, what criteria was used, what additional information the family could supply to you to perfect the claims and what steps are to be taken if the family wishes to appeal this decision. Travis and the family have been told that they now have to obtain COBRA coverage. In short, your denial of benefits and termination of the family under the plan, including his disabled daughter, is an outrage of the most flagrant sort. Your representatives have not acted in good faith. You have breached the contract and plan and your breach is continuing resulting in considerable hardship, expense, stress for the family and now legal costs.

Since Travis' claim is a welfare benefit and he is a participant and insured covered by ERISA, demand is herewith made that you explain fully why benefits were denied and termination was made retroactive to November 30, 2007. Demand is made that you supply copies of all documents relating to this decision, since the accident date of September 8, 2007. Demand is further made that Travis and his family be reinstated to the plan and that all medical bills be paid. Please advise.

Very truly yours,

JOSEPH R. YURGINE

JRY:am
xc: Travis and Dana Fann

*Page 2 of 2*

ENV 13691
3 OF 4
P1105006037

**Accident Information Request**

*TRAVIS FANN*

Name: *TRAVIS FANN*

Employee: Member ID or SSN:
*332- 68 - 3572*

Employer: *MIDWEST CONCRETE CONST (OWNER)*

Claimant Name: *SAME*

Relationship to Claimant: _____

1. Date and time of injury: *9/3/07*

2. Type of accident:  [ ] Home    [X] Friend/Relative Home    [ ] Automobile
   [ ] Public Place    [ ] Work Related
   [ ] Medical Malpractice    [ ] Public Transportation
   [ ] Other_____

3. Where did accident occur?: *FRIENDS PLACE*

4. How did accident occur? Please give details: *HOISTING TRAVIS MACHINE*
   *INTO BASEMENT HOIST GAVE FELL 10'APPX TO BTM OF OVERDIG*

5. Do you intend to file a claim against a person, business, or insurer (including your own
   auto or other liability insurer) for personal injury and/or medical expenses?
   If so, against who? *NO*

6. What is your attorney's name, address, and phone number who will be helping you with this accident.

7. If any liability insurance, whether your own insurance (such as auto, if an auto accident) or the third party's
   insurance, is responsible for medical expenses, give the name, address, and agent for each insurance
   company.

8. Have you received money or other payment from a responsible third-party? If so,
   please give information concerning such payment. *NO*

9. I do not intend to pursue any action related to this accident? *I do not*

To the best of my knowledge, the above statements are correct.

*10/22/07*
/Date

Signature of Employee

**Group Administrators, Ltd.**
450 East Remington Road * Schaumburg, Illinois 60173 * (847) 519-1880 * Fax (847)519-1979

# EXHIBIT B

Page 1 of 2

0173135799

01126B2YX

October 23, 2007

To whom it may concern,

Attached is the Accident Information Report you requested to be filled out. This accident applies to any and all of Travis Fann's claims since September 8, 2007 when the accident occurred. A hoist, lowering a trowel machine, malfunctioned causing Travis to fall approximately 10 feet. There is not a 3rd party liable for this accident.

Please accept this Accident Information Request and letter and apply it to all claims since September 8, 2007.

Thank you for your time and consideration in this manner.

Sincerely,

Travis Fann

Only Explanation
Provided by Mr. Fann
No Signed Reimburst

EXHIBIT C

AccuTerm 97 Screen Print - facts (1)    1:33:20 PM 09 Nov 2007

```
cmc ERG                        FAST ACCESS MENU                 31 hs 1 0
        Personal Information            General Information

IID: 803867831                Group....... CIWFR   BKLYR/CEM FIN LOCAL 11 IL
FANN, TRAVIS L                Division.... 1101     Eff: 12-01-05
283 NORTH JEFFERSON AVE       Department..          Eff:
BRADLEY, IL  60915            Area........          Eff:

Insured Male Married          Status...... Hired    Eff: 12-01-05
DOB: 07-05-1979    AGE: 28    Class.......
TEL:                          Networks.... BCBS TC3 PVS GDN

   1.RE:TRAVIS....DO NOT PAY FOR DOA:9/8/07 UNTIL IN HOUSE ATTNY
   2.GIVES THE OK....INJURY OCCURRED @ FRIENDS HOME-WHILE HOISTING
   3.TROWEL MACHINE  FELL APPROX 10' TO BSMT.CL#072622455..CMC 11/9/07
   4.TRAVIS: HAS HAD BACK PAIN FOR 6 YRS, RECENTLY FELL FROM A ROOF
   5.WHILE HELPING A FRIEND WHICH EXASPERATED THE PAIN. UNDERWENT
   6.A SPINAL FUSION ON 10/4/07. IN-PT FROM 10/4-10/11/07 DUE TO
   7.UNCONTROLLED PAIN. PROVENA HHC PROVIDED 2 SNV'S AND CONTINUES
   8.WITH P.T.   CYN  10/31/07.
   9.TRAVIS: CLAIMANT HAVING BACK FUSION IN SEPTEMBER, 2007. PLEASE
  10.CHECK IF THIS IS WORKERS COMP INJURY!!!  HAVE ALSO OPENED CM TO

Selection: .... (<Enter> to exit, # to edit,'P'age,'B'ack,'PR'int,'H'elp)
```

EXHIBIT D

12/12/2007 #E0:09:34 (TX/RX NO 7182) @002

073519208

## Construction Industry Welfare Fund of Rockford Time Loss Claim Form

Please return this form to:

CIWFR
Attn: Time Loss
P.O. Box 4509
Rockford, IL 61110-4509

Shirley

### Time Loss Benefits

| | Non-Occupational | Occupational |
|---|---|---|
| Weekly Benefit: | $350 less FICA/MBDC | $350 less FICA/MBDC |
| Max Benefit Period: | 26 weeks | 1 week |
| Waiting Period: | Accident 1st day | 1st day |
| | Illness 8th day | |

RTW
12-1-08
Off w/Dr
Release
Stoppin
Check

**For Office Use Only**  ☐ Eligible  ☐ Not Eligible

Qualifying Eligibility Hours: 5 hours per day with a max of 100 hours per month for no longer than 6 months (see SPD for lifetime max)

| | | |
|---|---|---|
| Last Name FANN | | First Name TRAVIS MI L |
| Address 283 N JEFFERSON AVE | | |
| City BRADLE | State IL | Zip 60915 | Phone# (815) 514-0928 |
| Local Union # 11 | SSN# 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 | DOB 7/5/79 | Date Employed |
| First full day unable to work 9/9/07 | Date returned to work NOT OFF | |
| Description of Injury or Illness: BROKEN BACK, LUMBAR ... SURGERY |

| | | |
|---|---|---|
| Is disability due to an accident? Yes ☑ No ☐ | Date of accident 9/9/07 | Time 12:00PM |
| Where did accident occur? Work | Describe accident: |
| FRIENDS | FELL OFF FOUNDATION ONTO TRACK |
| Is disability due to occupational cause? Yes ☑ No ☐ | If yes, complete Section B |
| Have you filed, or do you intend to file for Worker's Compensation? Yes ☐ No ☑ |

I hereby authorize any physician, hospital, or other medically related facility, insurance company or other organization, institution or person to release to the Construction Industry Welfare Fund of Rockford and/ or Group Administrators any records or information relating to my claim or any facts concerning my injury illness or treatment.

Member Signature _____     Date 12/11/07

### TO BE COMPLETED BY EMPLOYER ONLY IF OCCUPATIONAL

| | |
|---|---|
| Employer Name | Phone # (815) 344- |
| Address | |
| City | State | Zip |
| Employees Name | Is disability due to occupational cause? Yes ☐ No ☐ |
| Date (first full day) employee was unable to work: |
| Date | ☐ Resumed work | ☐ Expected to Resume work | ☐ Terminated |
| Employer Signature | Title | Date |

*Attending Physician's Statement must also be completed and returned to the CIWFR address above.*

EXT 419

If you have questions regarding your Time Loss, please call GAL at 815-399-0800 or 800-249-7947.

FAX (815) 399.5723

ATTN SHIRLEY

708946276 3      DEC-12-07 08:34 AM BEECHER JR HIGH      P.02

EXHIBIT E

ATTN: CATHERINE
CHARMELO·

<2>

=============================

1.   DATE AND TIME OF INJURY: _9/9/07_____

2.   TYPE OF ACCIDENT: (FALL)   WORK-RELATED   AUTO
                        OTHER  _____

3.   WHERE DID ACCIDENT OCCUR? _NEW CONSTRUCTION, HELPING_
     _A FRIEND_____

4.   HOW DID ACCIDENT OCCUR?  PLEASE GIVE DETAILS: _WAS HOISTING_
     _TROWEL MACHINE INTO BASEMENT AND HOIST MAL-_
     _FUNCTIONED THROWING ME OFF THE TOP OF THE_
     _FOUNDATION._

5.   DO YOU INTEND TO FILE A CLAIM AGAINST A PERSON, BUSINESS, OR
     INSURER (INCLUDING YOUR OWN AUTO OR OTHER LIABILITY INSURER)
     FOR PERSONAL INJURY AND/OR MEDICAL EXPENSES?
     IF SO, AGAINST WHOM? _NO._ _I ONLY PLANNED_
     _ON TURNING THIS CLAIM_
     _INTO MY INSURANCE._

6.   IF YOU HAVE RETAINED AN ATTORNEY, PLEASE PROVIDE HIS OR HER
     COMPLETE NAME, MAILING ADDRESS, AND PHONE NUMBER.
     _____
     _____N/A_____

7.   IF ANY LIABILITY INSURANCE, WHETHER YOUR OWN INSURANCE (SUCH
     AS AUTO, IF AN AUTO ACCIDENT) OR THE THIRD PARTY'S INSURANCE,
     IS RESPONSIBLE FOR MEDICAL EXPENSES, GIVE THE NAME, ADDRESS,
     AND AGENT FOR EACH INSURANCE COMPANY. _____
     _____
     _____N/A_____

8.   HAVE YOU RECEIVED MONEY OR OTHER PAYMENT FROM A RESPONSIBLE
     THIRD-PARTY?  IF SO, PLEASE GIVE INFORMATION CONCERNING SUCH
     PAYMENTS. _____
     _____N/A_____

TO THE BEST OF MY KNOWLEDGE, THE ABOVE STATEMENTS ARE CORRECT.

_1/10/08_
     Date                          Signature of Employee
CIWFR 073135799

EXHIBIT F

<3>

## REIMBURSEMENT AGREEMENT
=======================

I, TRAVIS L FANN IN CONSIDERATION OF MEDICAL
BENEFITS WHICH ARE PAYABLE ON MY BEHALF THROUGH CONSTRUCTION INDUSTRY WEL
RECOGNIZE THAT THE INSURING COMPANY (INCLUDING THE ABOVE COMPANY'S
SELF-FUNDED PLAN) HAS THE RIGHT TO BE REIMBURSED IN THE EVENT OF A
RECOVERY FROM ANOTHER PARTY.   THEREFORE, I AND ANYONE ACTING ON MY
BEHALF HEREBY AGREE:

(1)  TO FULLY COOPERATE WITH THE COMPANY IN OBTAINING INFORMATION
     ABOUT THE LOSS AND ITS CAUSES; AND

(2)  TO NOTIFY THE COMPANY OF ANY CLAIM FOR DAMAGES MADE ON MY
     BEHALF IN CONNECTION WITH THE LOSS; AND

(3)  TO INCLUDE THE AMOUNT OF BENEFITS PAID BY THE COMPANY ON MY
     BEHALF IN ANY CLAIM FOR DAMAGES MADE AGAINST THE OTHER PARTY;
     AND

(4)  THAT THE COMPANY:

     (A)  SHALL HAVE A LIEN ON ALL SUMS RECOVERED IN CONNECTION
          WITH THE LOSS TO THE EXTENT OF ITS PAYMENT(S); AND
     (B)  MAY GIVE NOTICE OF THAT LIEN TO ANY PARTY WHO MAY HAVE
          CONTRIBUTED TO THE LOSS; AND

(5)  TO REIMBURSE THE COMPANY FROM ANY FUNDS FROM THESE OTHER
     PARTIES, WHETHER RECEIVED BY SETTLEMENT, JUDGEMENT, OR
     OTHERWISE.

I HEREBY AUTHORIZE any physician, hospital, pharmacy,
insurance company, employer, claim administrator or
organization to release any information regarding the
medical history, treatment, disability, or benefits for
this claim.  A photocopy of this authorization shall be
valid as the original.  The above information to the best
of my knowledge is true and accurate.

__1/15/08__
/(Date)

_____
(Signature of Employee)

283    N    JEFFERSON    AVE
(Address of Employee)

BRADLEY    IL    60915
(City, State, Zip of Employee)

CIWFR

January 22, 2008

The name of the person I was working for is John Delhey.  Ashley Custom Homes 1233
Game Trail N.  Bourbonnais, IL 60914.  Phone number is 815-693-9358.

It was Saturday and I was not on Ashley Custom Homes' payroll.

Travis Fann

TRAVIS'
SOCIAL SECURITY  #
332- 68 - 3572
803867831

EXHIBIT G

Marc M. Pekay,                                    February 19, 2008

I am writing this in response to the letter I received on January 18, 2008 and February 9, 2008 . I am cooperating to the best of my ability according to the CIWF forms. The forms specifically state if *I* intend on filing a suit against a third-party send the subrogation forms. I personally do not intend on filing a claim against a third-party. But, since all claims have been suspended until you get this information, the friend I was working for was John Delya, 1233 Game Trail N. Bourbonnais, IL 60914. The phone number is 815-693-9358. It was a Saturday job for a friend, not the actual company itself. I don't know anything about the insurance.

Attacking my integrity when you have no idea what you are talking about is absurd. If you would do even a remote amount of investigation, you would realize that the hoist sits atop the foundation and a trowel machine is attached to a steel cable. The arm of the hoist, with the trowel machine attached, is then swung around and lowered by a pulley into the basement. I was swinging the arm around when the hoist came off of the foundation wall and I was tossed to the ground. Never did I state I was on a roof of any sort. I don't appreciate being called a liar and have my credibility questioned when you and your staff can't even investigate a simple matter.

Furthermore, I didn't know doing concrete away from my primary job was a crime. Your law offices state that performing such work in general automatically constitutes working for the Local 11 Union. Not so. And in conclusion, if I was able to turn this in for a Workers Compensation claim and be paid for the time off as well as having my medical bills be covered by someone else, do you think I would be going through all of this trouble? I am not as stupid as you are making me out to be.

Very truly yours,

Travis Fann

**EXHIBIT H**

**Accident Information Request**

Name: _TRAVIS FANN_

Employee: Member ID or SSN:
_332- 68 - 3572_

Employer: _LOCAL 11_

Claimant Name: _TRAVIS FANN_

Relationship to Claimant: _MYSELF_

1. Date and time of injury: _9/9/07_

2. Type of accident:
   | | Home    | | Friend/Relative Home   | | Automobile
   | | Public Place    | | Work Related
   | | Medical Malpractice    | | Public Transportation
   | / Other _POURED BASEMENT AT A PERSONS HOUSE_  _6 AM,_

3. Where did accident occur?: _2025 SPRING PARK BOURBONNAIS IL_
   _WORKED FOR - JOHN DELAY 1233 GAME TRAIL N BOURBONNAIS, I_

   _(BB) 1935_
   _935$_

4. How did accident occur? Please give details: _HOISTING TROWEL MACHINE INTO_
   _A BASEMENT AND I FELL FOR THE THOUSANDTH TIME!!_

5. Do you intend to file a claim against a person, business, or insurer (including your own auto or other liability insurer) for personal injury and/or medical expenses?
   If so, against who? _NO_   _I DON'T_
   _I JUST EXPECT MY INSURANCE, WHICH I PAY FOR, WOULD TO STOP SCREWING ME!_

6. What is your attorney's name, address, and phone number who will be helping you with this accident.
   _N/A YET_

7. If any liability insurance, whether your own insurance (such as auto, if an auto accident) or the third party's insurance, is responsible for medical expenses, give the name, address, and agent for each insurance company. _I DON'T KNOW JOHNS INSURANCE AND SINCE THIS WAS NOT DURING WORK HOURS OR FOR ANY COMPANY I DON'T SEE HOW ITS RELEVANT. I DID WORK FOR A FRIEND. I GUESS THAT CONCEPT IS HARD TO GRASP._

8. Have you received money or other payment from a responsible third-party? If so, please give information concerning such payment. _NO_

9. I do not intend to pursue any action related to this accident? _I INTEND TO IF DENIED._

To the best of my knowledge, the above statements are correct.

_2/19/08_
Date                                      Signature of Employee

**Group Administrators, Ltd.**
450 East Remington Road * Schaumburg, Illinois 60173 * (847) 519-1880 * Fax (847)519-1979

**EXHIBIT I**

To Whom It May Concern:                                    March 3, 2008

I am writing this letter in regards to all claims your office has received for Travis Fann since September 8, 2008. I have completed these forms to the best of my knowledge and the best of my ability. I was working for John Delahay at 2025 Springpark Loop in Bourbonnais, IL 60914 on September 8, 2008 when I fell. I was not in any binding contract to Ashley Custom Homes (John Delahay's company) or John Delahay himself. I was helping a friend out on a Saturday. Ashley Custom Homes address is P.O. Box 1055 Bourbonnais, IL 60914 and his phone number is 815-693-9358. He doesn't return my calls since the accident and is obviously not my friend anymore due to the fact your office is going to make him responsible. Therefore, I have no idea what insurance Ashley Custom Homes carries. This is all of the information I have. If you need anything else, I can be reached at 815-450-1929.

Travis Fann

**Accident Information Request**

Name: _TRAVIS FANN_

Employee Member ID or SSN:
_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_

Employer: _LOCAL 1 PREMIR_

Claimant Name: _TRAVIS FANN_

Relationship to Claimant: _____

1. Date and time of injury: _SEPT 8, 2007 ___ App 12:00 pm_

2. Type of accident:
   [ ] Home    [ ] Friend/Relative Home    [ ] Automobile
   [ ] Public Place    [ ] Work Related
   [ ] Medical Malpractice    [ ] Public Transportation
   [X] Other _FRIEND PLACE OF BUSINESS_

3. Where did accident occur?: _2025 SPRING PARK ___ BOURBONNAIS IL_
   _60914_

4. How did accident occur? Please give details: _HOISTING A TROWEL MACHINE INTO_
   _A BASEMENT. HOIST BROKE THREW ME 10' TO THE GROUND_

5. Do you intend to file a claim against a person, business, or insurer (including your own auto or other liability insurer) for personal injury and/or medical expenses?
   If so, against who? _I PERSONALLY DO NOT INTEND ON_
   _FILING A CLAIM AGAINST A 3rd PARTY_

6. What is your attorney's name, address, and phone number who will be helping you with this accident.
   _N/A ___ UNLESS NEEDED_

7. If any liability insurance, whether your own insurance (such as auto, if an auto accident) or the third party's insurance, is responsible for medical expenses, give the name, address, and agent for each insurance company. _JOHN DELHAY ___ PO BOX 1055 BOURBONNAIS IL_
   _60914 ___ (815) 693-9358_
   _THIS IS THE NAME OF THE PERSON I WAS WORKING_
   _FOR I DONT KNOW THE TYPE OF INSURANCE_

8. Have you received money or other payment from a responsible third-party? If so, please give information concerning such payment. _NO_

9. I do not intend to pursue any action related to this accident? _I JUST WANT BILLS PAID_
   _AND A DISABILITY CHECK._

To the best of my knowledge, the above statements are correct.

_8/3/08_
/Date

_____
Signature of Employee

**Group Administrators, Ltd.**
450 East Remington Road * Schaumburg, Illinois 60173 * (847) 519-1880 * Fax (847)519-1979

EXHIBIT K

**RESTATED**

**AGREEMENT AND DECLARATION OF TRUST**

**CONSTRUCTION INDUSTRY WELFARE FUND**

**ROCKFORD, ILLINOIS**

EXHIBIT L

Dependent of any such Employee, as the case may be, fails to notify the Trustees, as herein required, then upon any recovery made, whether by suit, judgment, settlement, compromise, or otherwise, by the Employee, Total and Permanently Disabled Employee, Retired Employee, or Dependent of any such Employee, the Trustees shall be entitled to reimbursement to the extent of benefits paid in accordance with terms of the Plan immediately on demand, and shall have the right to recovery thereof by suit or otherwise.

Anything in this provision contained to the contrary notwithstanding the provisions hereof shall in no manner have application to a claim or demand of an Employee compensable under provisions of the Workmen's Compensation Laws or similar legislation.

## ARTICLE III
## TRUSTEES

### SECTION 1
### UNION AND EMPLOYER TRUSTEES

As of the date of this Agreement, the Trustees are those individuals executing this Agreement as Trustees. At all times, four (4) of the Trustees shall be individuals appointed by and representing the Unions and four (4) of the Trustees shall be individuals appointed by and representing the Association. The Trustees shall have the exclusive authority and discretion to manage and control the assets of the Plan on and subject to the terms of this Agreement.

-9-

# Construction Industry Welfare Fund
# of Rockford, Illinois

## Welfare Plan

*Summary Plan Description*

**June 2003**

EXHIBIT M

research.

- the supply or service must not consist of repeated or unnecessary testing.

The initial determination of whether a supply or service is Medically Necessary shall be made by the Claims Administrator by applying the criteria listed above. In the event of a question as to whether something is Medically Necessary, the Claims Administrator may obtain a review by an independent health care review organization to assist it in applying these factors. Ultimately, if the Claimant appeals an initial determination, the decision whether a supply or service is Medically Necessary shall be made by the Trustees in its sole discretion.

**Medicare:** The term *Medicare* means the programs established by Title 18 or Public Law 80-90, as amended, entitled Health Insurance For the Aged Act, and which includes Part A (Hospital Benefits) and Part B (Supplementary Medical Insurance Benefits).

**Mental or Nervous Disorder:** The term *Mental or Nervous Disorder* means any disease or condition that is classified as a Mental Disorder in the current edition of International Classification of Diseases, published by the U.S. Department of Health and Human Services, or is listed in the current edition of Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association.

Notwithstanding the foregoing, the following conditions shall be considered to be Mental or Nervous Disorders for purposes of this Plan:

Any psychotic disorder, psycho physiologic, autonomic or visceral disorder, psychoneurotic disorder, personality disorder, transient situational personality disorder, or any other mental or emotional disorder of any type; alcoholism, drug abuse, and attention deficit disorder.

**Network:** The term *Network* refers to a preferred provider organization (PPO), whereby if a Covered Person utilizes a Health Professional in the Network, a discount could be received, and could result in a lower Co-Pay for the Covered Person.

**Non-Bargaining Unit Employee:** The term *Non-Bargaining Unit Employee* means an Employee who is not a Bargaining Unit Employee.

**Non-Participating Provider:** The term *Non-Participating Provider* means a Health Professional, Hospital, Skilled Nursing Facility, Home Health Agency, pharmacy, or other duly licensed health care provider who does not have an agreement with the Provider Network to provide medical and Hospital services to Covered Persons.

**Non-Urgent Care Claim:** The term *Non-Urgent Care Claim* means a claim for benefits under the Plan that does not constitute an Urgent Care Claim.

**Occlusion:** The term *Occlusion* means the contact relationship of the upper and lower teeth when they are brought together.

**Occupational Illness/Injury:** The terms *Occupational Illness and Occupational*

19

*Injury* mean any Illness or Injury (as applicable) for which the Covered Person is enti-
tled to receive benefits under any state or federal law governing payments to workers
for Injuries and/or Illnesses incurred as a result of employment. This includes, but is
not limited to, Injuries and Illnesses which result in an entitlement to benefits under
any state workers' compensation law or similar state or federal law.

**Occupational Therapist:** The term *Occupational Therapist* means a person who has
all educational requirements, licenses, permits and accreditations required in the juris-
diction in which the services were provided to evaluate the functional performance
ability of persons impaired by physical Illness or Injury, emotional disorder, congen-
ital or development disability, or the aging process, and to analyze, select and apply
occupations or goal-directed activities for the treatment or prevention of these disabil-
ities to achieve optimum functioning. Services provided by an Occupational
Therapist include the design fabrication and application of splints, administration and
interpretation of standardized tests to identify dysfunctions, sensory-integrative and
perceptual motor activities, the use of task oriented activities, guidance in the selec-
tion and use of assistive devices, goal oriented activities directed toward enhancing
functional performance, prevocational evaluation and vocational training, and consul-
tation in the adaptation of physical environments for the handicapped.

**Ongoing Course of Treatment:** The term *Ongoing Course of Treatment* means a
Pre-Service Claim for covered services that will be provided over a period of time or
number of treatments that has been approved by the Plan.

**Onlay:** The term *Onlay* means a cast Restoration that covers the entire chewing sur-
face of the tooth.

**Open Enrollment Period:** The term *Open Enrollment Period* means the period of
time specified by the Trustees during which any eligible person: 1) who is not a
Covered Person may enroll in the Plan; or

2) who is a Covered Person may change his or her Network elections or enroll in a
different Health Plan (if any) sponsored by the Trustees. The Open Enrollment Period
shall be held annually each Plan Year for enrollment during the next succeeding Plan
Year.

**Orthodontic Treatment:** The term *Orthodontic Treatment* means dental treatment
with its objective as the correction of malocclusion of the teeth.

**Orthodontics:** The term *Orthodontics* means the branch of dentistry primarily con-
cerned with the detection, prevention and correction of abnormalities in the position-
ing of the teeth in their relationship to the jaws.

**Outpatient:** The term *Outpatient* means a patient who comes to a Hospital or other
treatment facility for diagnosis and/or treatment, but who does not stay overnight.

**Out-of-Network:** The term *Out-of-Network* means Covered Benefits received from
a provider of health care services who is not a Participating Provider in the PPO.

20

26. Repair and maintenance of Durable Medical Equipment;

27. Charges for private duty nursing;

28. Supplies and/or services related to sex transformations or sexual dysfunctions or inadequacies, other than diagnosis and treatment of organic impotency;

29. Supplies and/or services prior to a Covered Person's effective date of coverage or after a Covered Person's termination date;

30. Supplies and/or services which are not Medically Necessary;

31. Non-medical recreational or educational therapy, or other forms of non-medical self-care or self-help training and any related diagnostic testing;

32. Any treatment, supplies and/or services related to an Occupational Illness or Occupational Injury;

33. Any Cosmetic Procedure, other than a Surgical Procedure for a newborn Dependent to correct a congenital defect or birth abnormality;

34. Surgical Procedures, surgical supplies, and any related supplies and/or services for the treatment or control of obesity, except as noted in Medical Benefits;

35. Drugs or medications that do not require a prescription, cosmetics, dietary supplements, vitamins, nutritional formulas, beauty aids, contraceptive devices, the Norplant System, other disposable medical supplies and/or services, blood pressure monitoring devices, and lifestyle/sexual dysfunction treatments (e.g. Viagra);

36. Membership fees associated with health clubs and weight loss clinics;

37. Assistance in the activities of daily living, including eating, bathing, dressing, or any custodial or self-care activities, homemaker services, supplies and/or services primarily for rest or domiciliary care, or any supplies and/or services that do not require skilled care;

38. Care for military service connected disabilities for which the Covered Person is legally entitled to supplies and/or services and for which facilities are reasonably available to the Covered Person and for which the Covered Person has no obligation to pay;

39. Supplies and/or services for conditions that state or local law requires to be treated in a public facility, except for supplies and/or services for conditions covered under the Medical Assistance Payment Program (Medicaid), or within the jurisdiction of the Illinois Department of Children and Family Services and the Illinois Medical Assistance Act;

40. Radial keratotomy or any Surgical Procedure for the improvement of vision when vision can be made adequate through the use of glasses or contact lenses;

41. Family and marital counseling;

75

CONSTRUCTION INDUSTRY WELFARE FUND
OF ROCKFORD, ILLINOIS                                                8/6/2007
PO BOX 4507
ROCKFORD, IL 61110-4507

332 68 3572
Cirbct

TRAVIS L FANN
283 NORTH JEFFERSON AVE
BRADLEY, IL 60915

Dear Member:

Your health and welfare benefits through the Construction Industry Welfare Fund end on 08/31/2007.

TO KEEP YOUR BENEFITS, PLEASE MAKE YOUR SELF-PAYMENT BY **08/31/2007.**

| Wk Period | Hrs Reported | Hrs Short | Amt Due |
|-----------|-------------|-----------|---------|
| 4/1/2007-6/30/2007 | 195.00 | 105.000 | 210.00 |

Please note that self-payments are limited to three (3) consecutive quarterly payments. If you have received this notice and believe your employer is late in making a payment on your behalf, you should make the self-payment, and if a payment is received from your employer later, a refund will be made to you.

FAILURE TO MAKE THE REQUIRED SELF-PAYMENT WILL RESULT IN LOSS OF BENEFITS.

All self-payments must be certified by signing below and returning this form with your payment to the above noted address.

I certify that I am not self-employed or employed by an employer who does not have a collective bargaining agreement with a union member of the Fund, and that I am currently a member of the Union.

_____
Signature

***PAYMENT WILL NOT BE ACCEPTED WITHOUT THIS SIGNED FORM. CASH OR BUSINESS CHECKS WILL NOT BE ACCEPTED FOR PAYMENT.***

EXHIBIT N

CONSTRUCTION INDUSTRY WELFARE FUND
OF ROCKFORD, ILLINOIS
PO BOX 4507
ROCKFORD, IL 61110-4507

11/2/2007

332-6-3572
CirPct

TRAVIS L FANN
283 NORTH JEFFERSON AVE
BRADLEY, IL  60915

Dear Member:

Your health and welfare benefits through the Construction Industry Welfare Fund end on 11/30/2007.

TO KEEP YOUR BENEFITS, PLEASE MAKE YOUR SELF-PAYMENT BY **11/30/2007.**

| Wk Period | Hrs Reported | Hrs Short | Amt Due |
|---|---|---|---|
| 7/1/2007-9/30/2007 | 0.00 | 300.000 | 600.00 |

Please note that self-payments are limited to three (3) consecutive quarterly payments. If you have received this notice and believe your employer is late in making a payment on your behalf, you should make the self-payment, and if a payment is received from your employer later, a refund will be made to you.

FAILURE TO MAKE THE REQUIRED SELF-PAYMENT WILL RESULT IN LOSS OF BENEFITS.

All self-payments must be certified by signing below and returning this form with your payment to the above noted address.

I certify that I am not self-employed or employed by an employer who does not have a collective bargaining agreement with a union member of the Fund and that I am currently a member of the Union.

Signature

***PAYMENT WILL NOT BE ACCEPTED WITHOUT THIS SIGNED FORM. CASH OR BUSINESS CHECKS WILL NOT BE ACCEPTED FOR PAYMENT.***



RECEIVED
NOV 21 2007
By

EXHIBIT O